The City of New York, Respondent, *v.* Edgar S. Appleby et al., Individually and as Executors of Charles E. Appleby, Deceased, Appellants, Impleaded with Another.

New York (city of) — foreclosure of tax lien — validity and sufficiency of description of property in tax lien and tax map — construction of sections 1027 and 1038 of charter of city of New York.

1. On examination of the description of property contained in the transfer of a tax lien sought to be foreclosed, *held*, that the description is such that a man of ordinary understanding, honestly seek-

ing for information, would have no difficulty in determining from the tax map referred to in the transfer and from the transfer itself, to what property it related, and that the evidence in the record sustains the finding of the Appellate Division as to its sufficiency. (New York Charter, § 1030, as amd. L. 1908, ch. 490.)

2. The language of section 1027 of the charter of the city of New York, as amended by the act of 1908, which introduced into the city charter the remedy of collecting taxes by a transfer of the right to receive them, is sufficiently broad to apply to taxes theretofore imposed.

3. Section 1038 of the charter contemplates a recovery for valid tax liens although the transfer includes others that are invalid.

*City of New York* v. *Appleby*, 168 App. Div. 503, affirmed.

(Argued May 8, 1916; decided October 3, 1916.)

APPEAL from a judgment, entered September 15, 1915, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff upon new findings.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Brown* and *Banton Moore* for appellants. The taxes in issue are void because the alleged lot No. 17 cannot be identified on the tax map and is not described in the assessment rolls. (*Lancaster S. B. Co.* v. *City of New York,* 241 N. Y. 1; *Zink* v. *McManus,* 121 N. Y. 259; *Ex parte N. Y. C. R. R. Co.,* 90 N. Y. 342; *Underhill* v. *Keirns,* 54 App. Div. 214; 170 N. Y. 587; *Clason* v. *Baldwin,* 152 N. Y. 204; *People* v. *Stillman,* 190 N. Y. 284; *People* v. *Selkirk,* 180 N. Y. 401; Blackwell on Tax Titles [2d ed.], 205; Black on Tax Titles, § 81.) The transfer of tax lien is void in that it contains items of alleged taxes levied prior to January 1, 1898, and there was no authority of law to sell the lien of said items.

Also the judgment herein is erroneous and in conflict with section 937 of the Greater New York charter. (*City of Rochester* v. *Bloos*, 185 N. Y. 42; Cooley on Taxn. [3d ed.] 943; *Slater* v. *Maxwell*, 6 Wall. 276; *People* v. *Hagadorn*, 104 N. Y. 576.) The printed pamphlet is defective in that it does not contain a particular or detailed description of the defendants' property as required by section 1027 of the charter. (*Smith* v. *Walker*, 24 J. & S. 366; 121 N. Y. 213.) The transfer of tax lien is fatally defective and does not support the judgment rendered in this case. (*People ex rel. National Park Bank* v. *Metz*, 141 App. Div. 600; *Rupert* v. *Village of North Pelham, etc.*, 139 App. Div. 303.)

*Lamar Hardy, Corporation Counsel* (*William H. King* and *Charles Bradshaw* of counsel), for respondent. The transfer of tax lien herein contains all that is prescribed by section 1030 of the charter. (*Tax Lien Co.* v. *Bird*, 163 App. Div. 957; *Lancaster S. B. Imp. Co.* v. *City of New York*, 214 N. Y. 1.) The premises affected are properly and sufficiently described in the annual records of assessed valuations and in the tax rolls. (*Lancaster S. B. Imp. Co.* v. *City of New York*, 214 N. Y. 1.) The presence of the words "Ward No. 5285" in the pamphlet did not vitiate the notice of sale. (*Lancaster S. B. Imp. Co.* v. *City of New York*, 214 N. Y. 1; *White* v. *Wheeler*, 51 Hun, 573.)

CUDDEBACK, J. The action was brought to foreclose a "transfer of tax lien" made by the city of New York to itself for taxes and assessments imposed during the years 1872 to 1907, and including a local assessment for a sewer imposed in 1908. On the trial of the action the plaintiff waived the right to recover upon all liens which accrued prior to the year 1894, and also the claim for the sewer assessment. The defendants were successful and recovered judgment at the Trial Term, but the court at

the Appellate Division reversed that judgment, made new findings of. fact and law, and gave judgment in favor of the plaintiff for the tax liens between 1894 and 1907.

A great many objections were raised by the defendants to the plaintiff's claims. The objection most strongly urged in this court was that the transfer of tax lien sued upon does not show with sufficient definiteness the land on which the taxes transferred were liens.

The complaint in the action contained the allegation that the transfer of tax lien affected real property described therein "as lot 17 in block 665 section 3 in the borough of Manhattan, reference being thereby intended to Tax Map of the city of New York for said borough, said lot appearing upon said tax map as follows, to-wit:

"Commencing at the northwesterly corner of 12th avenue and West 39th street, running thence westerly along West 39th street 363 feet, thence northwesterly 198 feet and 2 inches to West 40th street, thence easterly along West 40th street 379 feet and 2 inches to 12th avenue, and thence southerly along 12th avenue 197 feet and 6 inches to the point or place of beginning."

The Appellate Division found as a fact that the transfer of tax lien affected real property in the borough of Manhattan, and in its finding described the property in precisely the same terms as the allegation of the complaint, and the court concluded that the transfer was regular and valid and gave to the plaintiff a valid and enforceable lien against the lands and premises therein described. The principal question on the appeal is whether there is any evidence to sustain this and the other findings of fact of the Appellate Division. (*Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495.)

The charter of the Greater City of New York, as amended by chapter 490, Laws of 1908, provides in section 1030 that the transfer of tax lien shall contain "a description of the real property affected by the tax lien, which description shall include the name of the borough

in which the property lies and shall refer for certainty to the designation of said lot on the tax map, by its lot number and the number of the block, ward or section in which it is contained, and such other identifying description as the collector of assessments and arrears may deem proper to add."

The transfer of tax lien in this case contained under the head of "New Description" the following: "Section 3, block 665, lot 17." Turning to the "Tax Map," section 3, block 665, as directed by the statute, we find that it shows Thirty-ninth street and West Fortieth street and Twelfth avenue crossing them at right angles. The westerly side of Twelfth avenue is indicated by a dotted line on which are the figures 197.6. To the left of this and along the line of Thirty-ninth street are the figures 363. Beyond this line on Thirty-ninth street is a dotted line extending from Thirty-ninth to Fortieth street marked with the figures 198.2, and then to the right along West Fortieth street to Twelfth avenue is a line with the figures 379.2. In the inclosure made by these lines are the figures 17. The additional description contained in the transfer tax lien shows the property affected to be on the west side of Twelfth avenue between Thirty-ninth and Fortieth streets.

These figures on the map are the same as those set forth in the complaint. It would seem as though a man of ordinary understanding, honestly seeking for information, would have no difficulty in determining from this map and the transfer of lien to what property the transfer relates. The defendants undoubtedly knew the dimensions of their own land, and the trial court found the metes and bounds of their land in the same words and figures as the description appearing in the complaint and on the tax map.

The principal criticism of the map made by the appellants is that it shows a dotted line from Thirty-ninth to Fortieth street crossing the space inclosed by the bound-

ary lines of lot 17. This line bisects the lot about in the middle, and it might be taken to indicate the rear thereof. What this dotted line indicates nowhere appears. But it could not be taken for the rear line of lot 17 because the figures showing the side lines of lot 17, along Thirty-ninth and Fortieth streets, are beyond or outside the dotted line, and there are marks on the map which indicate that the side lines terminate at the cross line between Thirty-ninth and Fortieth streets marked 198.2. The scale on which the map is apparently drawn also shows the dotted line much too near Twelfth avenue to be the rear line of lot 17. All the lines bounding lot 17 are marked with numerals which sufficiently indicate what they are, but the dotted line across the middle of the lot is not characterized in any way. It does not, I think, render the map unintelligible.

The transfer of tax lien also contains a heading entitled "Old Description," under which the following appears: "Ward No. 5285. 64 & 64A to L." The defendants allege that the "Old Description" is also erroneous. The figures "5285" in the "Old Description" refer to a local assessment for a sewer in Thirty-ninth street. This sewer assessment, it is alleged, was not on lot 17. There is no proof in the record that it was not, and the presumptions are with the tax lien. (Charter, § 1037.)

The other figures, "64 & 64A to L," refer to the tax maps for the years 1872–1894. They indicate only the front 150 feet of lot 17, or the part thereof abutting on Twelfth avenue which had been cut up into smaller lots. The "Old Description" was not a matter which section 1030 of the charter required should be inserted in the transfer of lien. It was undoubtedly put there by the collector of assessments and arrears pursuant to that part of the section which authorized him to add "such other identifying description" as he might deem proper. The reference to the old taxes served, however, a useful purpose. Some persons examining the assessments

might perhaps desire to know what the old description was, though it was inaccurate. The transfer of lien simply pointed out where the old description could be found. A comparison of the tax maps would at once show to any person examining them that the old description did not coincide with the new description.

As has been said, the city withdrew its claim for the local assessment and also for the tax liens prior to the year 1894, and they are not included in the plaintiff's recovery. The errors in the old tax liens (1872–1894) were not, by the reference to the old description, incorporated into the liens of the later years (1894–1907). The evidence in the record sustains the finding of the Appellate Division as to the sufficiency of the description in the transfer of tax lien of the lands thereby affected.

The defendants also object that the only remedy which the city had for the collection of the taxes for the years 1894–1897 was a sale or lease of the lands on which the taxes were imposed and that the city had no authority to transfer the lien of the taxes for those years. Chapter 490, Laws of 1908, introduced into the city charter the remedy of collecting taxes by a transfer of the right to receive them. The language of section 1027 of the charter, as amended by the act of 1908, is sufficiently broad to apply to taxes theretofore imposed, and there is no good reason suggested why it should not apply to them. The section says: "The right of the city to receive taxes * * * and the lien thereof may be sold by the city and after such sale shall be transferred in the manner provided by this title."

This provision of the amendment is remedial and affects only the procedure. It mitigates very materially the hardships of the former law which worked in many cases a forfeiture of the land taxed. (*People ex rel. Pells* v. *Supervisors of Ulster Co.*, 65 N. Y. 300; *Peace* v. *Wilson*, 186 N. Y. 403.) The act of 1908 clearly gave a new and alternative remedy for the collection of taxes. Subse-

quently and by chapter 461, Laws of 1912, the old remedy of collecting taxes by a sale or lease of the land taxed was apparently dropped and the provision of section 1027 for a transfer of the tax lien was left standing as the remedy to be followed in all cases.

The defendants also urge that the transfer of tax lien is void because it includes both valid and invalid taxes. They say that the invalidity of the taxes for the years 1872 to 1894 renders invalid the taxes from 1894 to 1907, with which they are included in the transfer. (*People* v. *Hagadorn,* 104 N. Y. 516.) This rule ought not to apply in this equitable action. The transfer of tax lien made no difference in the nature of the city's claims against the defendants, and there was no difficulty in dropping on the trial those liens which were defective. But it is perhaps a sufficient answer to the objection that section 1038 of the charter contemplates a recovery for the valid tax liens though the transfer includes others that are invalid.

The further objections raised by the defendants to the plaintiff's cause of action, so far as they require consideration, are well disposed of in the opinion of Justice SCOTT at the Appellate Division, and it is not necessary to repeat his argument here. All the findings of the Appellate Division have sufficient support in the evidence appearing in the record, and the judgment appealed from should be affirmed, with costs.

HISCOCK, HOGAN and POUND, JJ., concur; WILLARD BARTLETT, Ch. J., and COLLIN, J., dissent on the ground the map was insufficient.

Judgment affirmed.